CLINE v. EASTMAN et al.

(Fourth Division.  Fairbanks.  April 28, 1915.)

No. 2082.

MINES AND MINERALS ⬤═▷68(2)—FORFEITURE—MINING LEASE.

 The lessor demanded a forfeiture of the mining lease because of alleged neglect and violations of its terms.   The evidence shows the ground is spotted and a low-grade proposition, that the lessee worked it in the usual way, with reasonable care and in a minerlike manner.  *Held*, injunction and forfeiture denied.

The plaintiff in his complaint alleges that he was, on the 25th day of October, 1913, the owner and entitled to the possession of that certain lot, piece, or parcel of placer mining ground situate on Ester creek, a tributary of Cripple creek, in the Fairbanks precinct and recording district, Fourth judicial division of Alaska, known and described as the lower

---

or downstream 900 feet in length by 597 feet in width of placer mining claim No. 7 below Discovery, first tier, left limit, on said Ester creek, together with the buildings, shafts, tunnels, drifts, ditches, flumes, and other improvements then situate on said described premises; that on said 25th day of October, 1913, he leased said premises to defendant W. A. Eastman in accordance with the terms of a certain lease attached to plaintiff's complaint and marked Exhibit A; that on the 13th day of November, 1914, the defendant assigned to defendants Carlin and Bindle a two-thirds interest in said lease; that since the 25th day of October, 1913, by virtue of said lease the defendant Eastman, and since the 13th day of November, 1914, by virtue of said assignment of a two-thirds interest, the said Eastman and his codefendants, Carlin and Bindle, have been in possession of said premises.

By the terms of said lease above referred to plaintiff does let, lease, and demise said premises unto the defendant Eastman for a period of three years, beginning October 25, 1913. Among other provisions specified in said lease are the following:

"That said lessee shall proceed immediately to said ground and at once commence the work of mining thereon and therein, and shall pursue such work thus begun continuously during the life of this agreement in a workmanlike and minerlike manner. He shall give notice to the lessor or his duly authorized agent of all clean-ups upon said claim, and permit the lessor or his duly authorized agent to be present thereat. That said lessee shall keep securely and at his own risk all the gold and precious metals extracted from the ground, and on the demand of the lessor he shall deliver to said lessor, or his duly authorized agent or order, ten per cent. (10%) of the net product of said mine in full consideration for all the purposes hereby let, leased, and demised; the remainder the lessee shall retain in full compensation for all labor performed under this agreement. The lessee agrees to keep an accurate account of all the expenses incurred by him in operating said ground, and said accounts shall be open at all proper times to inspection by the lessor, and no payment to the lessor on account of royalty shall be made until all operating expenses are paid, after which the lessor shall be entitled to his 10% of the net product of said mine. The lessor retains the right to enter, pan and rock upon the said premises at any time for the purpose of determining the character of the ground and the proper conduct of the work; but the lessee is to have sole supervision of said mining operations, and the right to employ such labor as he deems necessary. Any violation of the terms or conditions herein and hereby agreed to by the lessee shall forfeit his rights to all re-

sults that may have accrued prior to said violation, and the lessor may enter into possession of said premises."

The plaintiff alleges that said Eastman proceeded to said described premises and commenced the work of mining therein and thereon; that the said Eastman failed and neglected to carry on such work continuously, as in said lease provided; that the said Eastman negligently permitted two shafts theretofore existing upon said premises to slough and cave in and become a total loss to the plaintiff, to his damage in the sum of $1,600; that the said Eastman, since his possession and working of said premises, has carelessly and negligently handled the bedrock, and gold-bearing gravel, earth, rock, and sand mined upon and in said premises, and that the said Eastman, since his possession, has carelessly and negligently incurred large expenditures for labor, material, supplies, and repairs; that said Eastman has made clean-ups without notifying plaintiff or his duly authorized agent of the same and without the knowledge of plaintiff or his agent.

By reason of the foregoing allegations on the part of the plaintiff, the plaintiff prays the court to enjoin defendant from further mining said premises, and to decree said lease forfeited.

The answering defendants admit being in possession of said premises, but deny any violation on their part of the terms of said lease.

L. R. Gillette and H. A. Day, both of Fairbanks, for plaintiff.

G. B. Erwin and M. E. Stevens, both of Fairbanks, for defendants.

BUNNELL, District Judge. The question arises: Under what conditions and circumstances shall the court declare a forfeiture of a mining lease, and deliver possession to the lessor? Have the provisions of the lease, or any of them, been violated substantially, to the damage of the lessor, the plaintiff? and will a technical violation, if it results in no substantial damage to the lessor, warrant the court in declaring a forfeiture?

1. The plaintiff contends that defendants have failed to carry on work continuously, as provided in the lease. If "con-

tinuously" means three shifts per day, with a large crew of men, this covenant of the lease has been violated. The evidence shows that Eastman placed considerable machinery upon the ground and employed a crew of men to work the property; that he failed to take out enough to pay the labor and cost of operations; that the ground is spotted, and is what is commonly called "a low-grade proposition"; that several attempts were made to operate the property by a change of management. Is the court justified in saying that if more men had been employed, and more or different machinery been used, the result would have shown a profit? Anything that tends towards the operations of the property—moving machinery to the workings, cutting wood for the future, establishing suitable camp, and hauling supplies—are elements of operations, and, if performed in good faith, are entitled to a reasonably liberal construction. Between the owner, believing his claim contains unlimited wealth, and the layman, who has operated at a loss, there is no point of reconciliation capable of mathematical demonstration. The lease in question fails to define what is meant by "continuously working." It is indefinite and uncertain. The evidence warrants the court in saying that this provision of the lease has not been violated.

2. It is provided in the lease that the lessee is to have sole supervision of the mining operations on the property, and the right to employ such labor as he deems necessary. Plaintiff complains that certain shafts on the property have been allowed to slough and cave in, and that plaintiff has sustained damages thereby to the extent of $1,600. The evidence shows that shafts Nos. 1 and 2 have sloughed and caved in, and that the property is now being operated through shaft No. 3, constructed by Eastman since he began to operate the property. There is no provision in the lease requiring the defendant Eastman to maintain the shafts already existing on the property at the time he entered into possession, nor has any evidence been introduced showing that the plaintiff has been damaged by the sloughing of shafts Nos. 1 and 2 in the sum of $1,600, or any other sum.

3. It is contended that defendant Eastman has carelessly and negligently handled the bedrock and gold-bearing gravel, earth, rock, and sand mined upon and in said premises, and

has carelessly and negligently incurred large expenditures for labor, material, supplies, and repairs. The evidence presented to the court on this subject is conflicting. The testimony of Cline and witnesses supporting his contention does not disclose such a knowledge of facts on their part concerning the operation of this property as will warrant the court in saying their position is correct. It does appear that the mining operations have not been successful from the standpoint of either the lessor or the lessee. The evidence shows that the ground is difficult and expensive to work, the run of the pay hard to locate, and, as one witness has testified, averaging only from 30 to 35 cents per square foot of bedrock. It is not shown by satisfactory evidence that the values have not been saved from the dirt sluiced, nor is there any evidence that the supplies purchased were unnecessary, or have been improperly used or left unused.

4. Considerable evidence has been introduced to show that clean-ups have been secretly made. This defendants deny. And the explanation in regard to it convinces the court that the plaintiff has no good ground for complaint in this regard. Cline was upon the ground several times, and remained there during a portion at least of the sluicing. He was in a position to know what was being done. It does not appear that there was any attempt to conceal from him the result of the mining operations. The court is convinced that Eastman and his associates used proper means to locate the pay, and that their method of prospecting was in good faith and warranted under the circumstances.

5. The books of account and system of keeping a record of the mining transactions do not appear to the court as being worthy of commendation. Such as it was, there is nothing to show that Cline was not fully aware of the method used. On the other hand, it would appear that, if he had desired to investigate the books of account, the privilege would have been readily granted.

6. Cline cannot stand idly by, registering no substantial objections, and predicate a complaint for forfeiture of the lease for the reason that the operation of this property is not satisfactory to him. Eastman and his associates have everything to gain by making a success, rather than failure, of the venture. The evidence shows to the court that they have acted in good faith, and certainly the court would not in equity

take from the defendants the winter's dump and turn it over to Cline.

The question of whether or not this is an unfavorable or favorable lease is not before the court; neither can the court consider the fact that Cline could make a better deal if this lease was declared forfeited.

This action is not for an accounting. The question is: Have the defendants violated the lease in any substantial particular, thereby entitling plaintiff to a decree of forfeiture of the lease? Findings in conformity with the views herein expressed, together with judgment and decree, may be prepared and submitted.